AO 91 (Rev. 11/11)   Criminal Complaint

LODGED
CLERK, U.S. DISTRICT COURT

6/21/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ COO _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

FILED
CLERK, U.S. DISTRICT COURT

June 21, 2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CLD _____ DEPUTY

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ADAN MARTINEZ-LUIS | ) | Case No.   2:24-mj-03735-DUTY |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   November 17, 2023   in the county of   Los Angeles   in the
Central   District of   California   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | (Distribution of a Controlled Substance) |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

/s/ David D. Doherty
*Complainant's signature*

DEA SA David D. Doherty
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   06/21/2024

*Judge's signature*

City and state:   Los Angeles, California

Hon. Alka Sagar, U.S. Magistrate Judge
*Printed name and title*

*AUSA:*  Derek R. Flores (x4896)

## AFFIDAVIT

I, David D. Doherty, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant against Adan MARTINEZ-LUIS ("MARTINEZ-LUIS") for violation of 21 U.S.C. § 841(a)(1) (Distribution of a Controlled Substance), which occurred on or about November 17, 2023.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3.    I am a Special Agent ("SA") with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been since May 2018. I am currently assigned to Enforcement Group 4 of the Los Angeles Field Division ("LAFD") and am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States empowered by law to conduct

1

investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

4.    I have participated in dozens of drug-related investigations, which have led to multiple arrests of drug traffickers with ties to transnational drug organizations. As a result of my investigative experience, I have interviewed these individuals regarding the transportation and sales of controlled substances and have garnered insight into the methods and techniques used in the production and transportation of drugs, and tactics used to allude law enforcement detection.

5.    I have received training and have experience investigating violations of federal drug and money laundering laws, including but not limited to, Title 21, United States Code, Sections 841, 846, 952, 959 and 963, and Title 18, United States Code, Section 1956(a). I have been involved in various electronic surveillance methods, the debriefing of defendants, informants and witnesses, as well as others who have knowledge of the manufacturing, distribution, transportation, storage and importation of controlled substances and the laundering of drug proceeds.

6.    Throughout my law enforcement career, I have investigated individuals and criminal organizations which have represented a significant threat to public safety and national security. I have received comprehensive, formalized instruction to include such topics as drug identification, money laundering techniques, patterns of drug trafficking, complex conspiracies, the exploitation of drug traffickers' telecommunications

2

devices, criminal law, surveillance, and other investigative techniques. I have participated in numerous investigations into the unlawful importation, manufacture, possession with intent to distribute, and distribution of drugs and controlled substances, the laundering of drug proceeds, and conspiracies associated with drug offenses. In conducting these investigations, I have used a variety of investigative techniques and resources, including but not limited to, surveillance, confidential source debriefings, telephone toll analysis, as well as wire and electronic communication analysis in federal wiretap investigations.

### III. SUMMARY OF PROBABLE CAUSE

7.   In November 2023, a DEA Confidential Source (the "CS") working under the direction and supervision of the DEA, texted a Mexico-based drug broker to express interest in purchasing methamphetamine in Los Angeles[1]. The drug broker responded that he could sell 6 pounds of methamphetamine for $5,400 and confirmed that he would send CS's number to "the guy," who would complete the transaction with the CS in Los Angeles.

8.   On November 11, 2023, Adan MARTINEZ-LUIS ("MARTINEZ-LUIS") called the CS, said he was calling on behalf of "The Relative," and confirmed the sale of 6 pounds of methamphetamine for $5,400. Between November 11 and 16, 2023, the CS and MARTINEZ-LUIS coordinated a time and place to meet and conduct the deal.

---

[1] All communications between the CS and the Mexico-based broker were written in Spanish; I am fluent in Spanish and English and have reviewed these communications.

9.   On November 17, 2023, MARTINEZ-LUIS told the CS he would arrive on foot, met the CS at the parking lot of Desano's Pizzeria, 4959 Santa Monica Blvd, Los Angeles, California 90029, and sold the CS approximately 6 pounds of methamphetamine for $5,400.

10.   Based on GPS ping data, law enforcement database inquiries, and surveillance, DEA investigators determined that MARTINEZ-LUIS lived at a specific address on N. Normandie Avenue in Los Angeles, California (the "Normandie Residence"). That address is approximately 90 feet from a deal location MARTINEZ-LUIS originally proposed to the CS and around 1000 feet from the eventual deal location. On June 20, 2024, law enforcement searched the Normandie Residence pursuant to a federal search warrant and found approximately 25 pounds of suspected methamphetamine and approximately 1/2 pound of suspected fentanyl.

### IV. STATEMENT OF PROBABLE CAUSE

11.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, and review of reports and other documents prepared by law enforcement officers, I am aware of the following:

**A.    A DEA CS Orders Methamphetamine from a Mexico-Based Drug Broker**

12.    In November 2023, the CS[2] exchanged voice notes and text messages with a Mexico-based narcotics broker and Sinaloa Cartel member who has been identified by law enforcement, via the phone applications "WhatsApp" and "Threema," to discuss the sale of and to negotiate the purchase of 6 pounds of methamphetamine for $5,400.

13.    On November 11, 2023, at approximately 4:34 p.m., the CS received a phone call from an unknown individual (later identified as MARTINEZ-LUIS, as described below) from a telephone number ending in 3603 (the "3603 Number"). The CS answered the phone and asked if the call was being made on behalf of "The Relative" – by which I believe the CS was referring to Co-conspirator 1 - which MARTINEZ-LUIS affirmed. The CS and MARTINEZ-LUIS agreed to the sale of 6 pounds of methamphetamine. MARTINEZ-LUIS also informed the CS that he was in Hollywood and to contact him when he was available either

_____

[2] The CS, a Mexican national, began working with the DEA in 2013 after s/he was convicted of possession of marijuana for sale and illegal re-entry into the United States following deportation or removal. From 2019 to 2022, the CS also acted as a confidential source with Homeland Security Investigations. The CS is working with the DEA in exchange for monetary compensation, deferred action on his/her immigration status, and for permission to enter and remain in the United States. The CS's criminal history only includes the aforementioned convictions for possession of marijuana for sale and illegal re-entry into the United States following deportation or removal. To date, the CS has been paid approximately $830,908 for information s/he provided to DEA investigators. Since 2013, s/he has assisted in investigations resulting in the seizure of approximately thousands of pounds of narcotics and millions of dollars.

Wednesday (November 16) or Thursday (November 17). MARTINEZ-LUIS texted the CS the address of 5100 Santa Monica Blvd, Los Angeles, California to inform the CS of his location.

14.   On November 15, 2023, at approximately 7:04 p.m., MARTINEZ-LUIS and the CS spoke and confirmed the deal for 6 pounds of methamphetamine in Hollywood. The CS asked if MARTINEZ-LUIS could do the deal the following day. MARTINEZ-LUIS informed the CS that he would not be available, however would be available any time on Friday (November 17).

15.   On November 16, 2023, at approximately 7:24 p.m., the CS and MARTINEZ-LUIS agreed to meet at 11 a.m. on Friday, November 17, 2023. MARTINEZ-LUIS texted the CS the address of 5100 Santa Monica Blvd, Los Angeles, California as a place to meet and conduct the deal.

**B.   MARTINEZ-LUIS Sells the CS Approximately 6 Pounds of Methamphetamine**

16.   On November 17, 2023, at approximately 11:30 a.m., the CS called MARTINEZ-LUIS and asked if they could instead meet at Lazy Acres, 1841 N Western Ave, Los Angeles, California 90027, (approximately 1.4 miles from the 5100 Santa Monica Boulevard address that MARTINEZ-LUIS had texted the CS). MARTINEZ-LUIS responded that that location was too far and they would have to meet at the 5100 Santa Monica Boulevard address because he did not have a car and would be arriving on foot.

17.   The CS then called MARTINEZ-LUIS and told him that the CS was parked in the parking lot of Desano's Pizzeria, 4959 Santa Monica Blvd. MARTINEZ-LUIS said he would be there shortly.

6

18.   At approximately 12:12 p.m., DEA investigators saw MARTINEZ-LUIS approaching that location on foot from Romaine St. and Alexandria Ave., carrying a red weighted shopping bag.

19.   At approximately 12:15 p.m., I saw MARTINEZ-LUIS carrying a weighted shopping bag meet with the CS at the parking lot of Desano's Pizzeria. Upon meeting MARTINEZ-LUIS, the CS opened the trunk of the CS's car and they placed the red shopping bag inside. The CS looked through the bag and visually confirmed that the agreed amount of 6 pounds of methamphetamine was present. The CS then closed the trunk and handed MARTINEZ-LUIS the agreed $5,400. MARTINEZ-LUIS then went to the back seat of the CS's car and counted the money. MARTINEZ-LUIS exited the car shortly thereafter and shook hands with the CS. The CS drove away in the CS's car and MARTINEZ-LUIS left the parking lot on foot.

20.   Law enforcement surveilled MARTINEZ-LUIS and followed him to the intersection of N. Normandie Ave and Santa Monica Blvd., at which time surveillance lost sight of MARTINEZ-LUIS. The intersection where surveillance lost sight of MARTINEZ-LUIS is adjacent to his residence, 1060 1/4 N. Normandie Ave., Los Angeles, California 90029, as described below.

21.   At approximately 12:25 p.m., DEA SAs Doherty and Duran escorted the CS from the deal location to a predetermined location, where I retrieved the red bag from the trunk of the CS's car.[3] The bag contained 6 individually vacuum sealed storage

---

[3] Prior to the meet, law enforcement searched the CS for drugs to ensure he did not have any and provided the CS funds for the deal.

bags, each with an opaque crystalline like substance believed to be methamphetamine. Law enforcement later submitted the 6 packages to the DEA Southwest Laboratory for forensic analysis, which revealed that the substance was, in fact, 2,670.9 grams of methamphetamine (i.e., approximately 5.88 pounds).

### C.    MARTINEZ-LUIS Identified as the Person Who Sold the Methamphetamine to the CS

22.    On December 5, 2023, the Honorable Judge Margaret Bernal of the Los Angeles County Superior Court authorized the search warrant for the disclosure of GPS information, cell-site information, and the use of a cell-site simulator for the 3603 Number (the phone number that MARTINEZ-LUIS used to contact the CS). GPS location data indicated that this phone was frequently at the Normandie Residence, including routinely present during the overnight hours.

23.    Based on a review of law enforcement and public databases, including Thomson Reuters, I determined that MARTINEZ-LUIS was listed as an occupant of the Normandie Residence. Based on a comparison of MARTINEZ-LUIS's California driver's license photograph to the surveillance of the person who sold methamphetamine to the CS on November 17, 2023, I identified MARTINEZ-LUIS as the person who sold the drugs.

24.    In December 2023 and January 2024, Investigators conducted surveillance of the Normandie Residence, at which time MARTINEZ-LUIS was observed exiting the home in the early morning hours. Additionally, MARTINEZ-LUIS was observed entering a gray Honda Accord, bearing California license plate ending in 881,

parked nearby. According to California DMV records, MARTINEZ-LUIS is the registered owner of that car, and the associated address is the Normandie Residence.

**D. Law Enforcement Seizes Approximately 25 Pounds of Methamphetamine and Approximately a Half Kilogram of Fentanyl from the Normandie Residence**

25.  On June 7, 2024, the Honorable Judge Karen L. Stevenson authorized a search warrant for the Normandie Residence and for MARTINEZ-LUIS, Case Nos. 2:24-mj-3347 and 2:24-mj-3348.

26.  On June 20, 2024, at approximately 6:00 a.m., Investigators with Los Angles Field Division Enforcement Group 4 and Southwest Border 4, set up surveillance on the Normandie Residence, in anticipation of the execution of the search warrant of MARTINEZ-LUIS's home. At about 7:10 a.m., MARTINEZ-LUIS exited his residence and proceeded to walk in the direction of his vehicle (the gray Honda Civic bearing California license plate ending in 881), parked nearby, near the intersection of N. Normandie Ave and Santa Monica Blvd.

27.  I then stopped MARTINEZ-LUIS and searched his person, obtaining the keys for his residence and the exterior pedestrian gate, to gain access to the property in a safe and efficient manner. For the safety of agents executing the search warrant and for the safety of any inhabitants within the Normandie Residence, I asked MARTINEZ-LUIS if he lived with anyone, and if so, was anyone still present within the home and where would they be located. MARTINEZ-LUIS informed me that he had three male roommates, and that all roommates were still present as he

departed. MARTINEZ-LUIS stated that two of his roommates slept in the living room, and he and another roommate slept in the single bedroom of the home.

28.  At approximately 7:30 a.m., agents executed the search warrant of the Normandie Residence. Upon entry into the residence, agents were met by a male sleeping in the living room and another a male was found sleeping on the floor of the bedroom.

29.  A search of the Normandie Residence resulted in the seizure of approximately 25 pounds of suspected crystal methamphetamine and approximately 1/2 kilogram of suspected fentanyl. 21 individually sealed plastic bags containing suspected crystal methamphetamine were located in the bedroom closet, 2 plastic bags containing suspected crystal methamphetamine, along with multiple baggies of suspected powdered fentanyl, were located in a dresser in the bedroom. Also stored within the dresser were documents, including mail, DMV documents, receipts, and checks all addressed to Adan MARTINEZ-LUIS. A sealed compressed brick of suspected fentanyl was also located in a storage bench at the foot of the bed within the bedroom. Two other plastic bags containing suspected powdered fentanyl were located in the living room/common area.

//

//

## V.   <u>CONCLUSION</u>

30.  For all of the reasons described above, there is probable cause to believe that MARTINEZ-LUIS committed a violation of 21 U.S.C. § 841(a)(1), Distribution of a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>21st</u> day of June
2024.

_____
HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE